WILLIAM F. HARRIS, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Judgments:** VACATING. Courts of general jurisdiction have the authority to change, correct, revise, and vacate their own judgments at any time during the term at which they were rendered, and before rights have become vested thereunder.

2. **Trial:** MOTION FOR NEW TRIAL: DECISION: AFFIDAVITS. While the law requires a motion for a new trial to be filed within three days after the rendition of a verdict, and during the term at which the verdict was returned, yet it is not necessary that the motion should be decided upon within three days, nor is there anything in the law of this state which would prohibit the filing of affidavits in support of such motion at any time before its submission to the court.

3.  Criminal Law: TRIAL: MISCONDUCT OF JURY. Where, in a prosecution under section fourteen of the criminal code, for an assault with intent to commit rape, the person upon whom the assault is alleged to have been made having been shown to be a female child of tender years, and after the cause was submitted to the jury, one of the jurors procured a copy of the Compiled Statutes, and took the same into the jury room, and read therefrom section twelve of the criminal code, and especially the latter clause thereof, which refers to the carnal knowledge or abuse of a female child under the age of fifteen years, and also read from chapter forty-six of the criminal code, which provides for motions for new trials, it was *Held*, That such misconduct was sufficient to vitiate the verdict.

4.  ————: SETTING ASIDE VERDICT. Affidavits of jurors may be received, for the purpose of avoiding a verdict, to show any matter occurring during the trial, or in the jury room, which does not essentially inhere in the verdict itself, as where a verdict for damages is ascertained by aggregation and average without subsequent ratification, or where it is made to depend upon chance, or where a part of the jury become so intoxicated as to destroy their ability to deliberate and exercise their reason and judgment, or where witnesses are surreptitiously called before the jury and permitted to detail the principal facts, or any other matter concerning which all or any considerable portion of the jury may testify with equal knowledge, by having seen or heard the misconduct which is alleged to have occurred.

ERROR to the district court for Dodge county. Tried below before MARSHALL, J.

*R. J. Stinson* and *J. E. Frick*, for plaintiff in error, on power of court to vacate judgment, cited: *State v. Daugherty*, 30 N. W. R., 685, and cases there cited: *Garrison v. People*, 6 Neb., 274. Misconduct of jury: *Perry v. Bailey*, 12 Kan., 539. *Wright v. Telegraph Co.*, 20 Iowa, 195. *Bailey v. Beck*, 21 Kan., 462. Thompson and Merriam on Juries, Secs. 391, 397.

*William Leese, Attorney General*, for the State, cited: *Ex parte Holmes*, 21 Neb., 327. *Coombs v. Hibberd*, 43 Cal., 452. Bayliss New Trial, 543. Thompson and

Merriam on Juries, Sec. 440.  *Taylor v. Garnett*, 11 N.
E. Rep., 309.

REESE, CH. J.

Plaintiff in error was indicted by the grand jury of
Dodge county for the crime of assault with intent to com-
mit rape upon Catherine Mooker, a female child. After
a plea of not guilty, a trial was had which resulted in a
verdict of guilty as charged in the indictment. This ver-
dict was returned on the 6th day of February, 1888. A
motion for a new trial was filed on the 9th day of the same
month, and on the same day an amended or substituted
motion was filed, which we here copy:

"Comes now the defendant in the above entitled cause,
and moves the court for a new trial in said action, and to
set aside the verdict heretofore returned in said cause, and
for cause thereof shows:

"1st. That the verdict is not sustained by sufficient
evidence.

"2d. That the verdict is contrary to the evidence.

"3d. That the verdict is contrary to law.

"4th. Irregularity in the proceedings of the court,
and abuse of discretion by the court, by which the defend-
ant was prevented from having a fair and impartial trial,
as appears from the affidavit of William F. Harris and
others, attached hereto and made a part hereof.

"5th. Misconduct of the jury in deliberating upon,
and the manner of agreeing upon, a verdict, as appears
from the affidavits of the several jurors, hereto attached
and made a part hereof."

On the 11th day of February the motion was overruled,
and judgment and sentence of conviction entered on the
verdict.

Upon the hearing of the motion for a new trial no evi-
dence was offered in support of the fifth assignment in the

motion. On the 14th day of February plaintiff gave notice to the prosecuting attorney that on the 18th day of the same month, and during the same term, he would apply to the district court for an order setting aside the judgment and granting a new trial on affidavits to be on file on the 16th. On the day set, to-wit, the 18th, the motion was called for hearing, upon the affidavits of jurors and others impeaching the verdict. The prosecutor then moved to strike from the files the affidavits of the jurors. Affidavits of other jurors having been filed by the state, plaintiff in error objected to the reading of certain parts thereof. He also moved for leave to file affidavits in rebuttal, to which the prosecuting attorney objected. These motions and objections were all submitted to the court, which upon consideration overruled all, except the motion of plaintiff in error for leave to file affidavits in rebuttal, which was sustained, and to the adverse rulings of the court both plaintiff in error and the prosecutor excepted. Plaintiff in error brings the cause to this court by proceedings in error, assigning for such error, substantially, the following grounds:

First. The verdict is not sustained by sufficient evidence.

Second. The verdict is contrary to law.

Third. The court erred in refusing to set aside the verdict of the jury and grant a new trial, upon the ground of the misconduct of the jury.

Fourth. The court erred in overruling plaintiff's objection to the consideration of the affidavits of jurors in support of the verdict.

Fifth. The court erred in not vacating the judgment and granting a new trial.

It is insisted by the defendant in error that the court had no power or authority to vacate its judgment, and hence there could be no error in refusing to do so, and in support of this, *Ex parte Holmes*, 21 Neb., 324, is cited.

That case was where the motion for a new trial was not filed until the next term of court after the one at which the judgment had been rendered, and some six months after Holmes had been taken to the penitentiary in execution of the sentence. In this case all the proceedings were had during the term at which plaintiff was tried, and before the execution of any part of the sentence. The authority of courts of record over their own judgments, during the term at which they were rendered, has generally been considered ample for the purpose of correct- ing errors or of preventing a failure of justice in any other respect. *Commonwealth v. Weymouth*, 2 Allen, 144. *The King v. Price*, 6 East T. R., 323. *Burnside v. Ennis*, 43 Ind., 411. *Lee v. State*, 32 O. S., 113. *U. S. v. Har- mison*, 3 Sawyer, 556.

There is nothing in the statute of this state governing motions for new trials which requires a decision thereon at or within any particular time. Had judgment not been rendered prior to the 18th day of February, we know no rule which would have prevented plaintiff in error from presenting evidence in support of his motion at any time. before the submission thereof, even though the three days in which the motion might be filed had expired. If this is true we can see no reason why the court might not ex- amine the evidence and vacate its judgment, if it appeared that the accused had not had a fair trial. It appears that the motion and affidavits were heard and overruled, and the ruling of the court thereon is the error assigned. It was shown by the affidavits of F. F. Knew and F. C. Tymm, who were not jurors, that Mr. Knew was the po- lice judge of the city of Fremont, and had his office in a room adjoining the jury room, the two being connected by a door ; that one of the jurors, on the second day of their deliberation, and on the date on which the verdict was rendered, returned to Judge Knew's office the Compiled Statutes of 1885, and that another juror returned to said

office a copy of Webster's Unabridged Dictionary, both of which had been in the jury room while the jury were deliberating, and both of which belonged to Judge Knew, and had been taken from his office; that prior to the return of the books referred to, the witnesses had heard loud reading in the room where the jury were. This is in part supported by the affidavit of the bailiff, who had charge of the jury, and who, when the retirement of any of them was necessary, conducted them out and in through the office referred to. Stated in general terms—it is shown by affidavits of five of the jurors that, during the deliberation of the jury, one of their number procured a copy of the Compiled Statutes referred to, and read to the whole jury section twelve of the criminal code, in which it is declared that, "if any male person of the age of eighteen years or upwards shall carnally know or abuse any female child under the age of fifteen years, with her consent, every such person so offending shall be deemed guilty of rape," etc. That he also turned to that portion of the statutes referring to new trials in criminal cases, reading the same and arguing therefrom that if the part of said section read by him did not apply to the case, a new trial would be granted by the court, and that he persistently and repeatedly read the section of the statute referred to. It was conceded by the other members of the jury who made affidavits on the part of the state, that the books referred to were used and the sections read, but it was claimed by some that the reading did not affect their verdict, and that although they were some two days deliberating, the contention in the jury room was not upon the matters read from the books; the dictionary being used only for the purpose of ascertaining the meaning of the word "intent." It was shown by affidavits that neither plaintiff in error nor his attorneys had any knowledge of the facts above detailed at the time the motion for a new trial was argued and submitted.

It must be conceded that if the question was properly presented to the trial court, and upon competent evidence the misconduct of the jury was clearly sufficient to vitiate the verdict. ` We know of no rule of law that would permit trial jurors to procure statutes or other law books, and base their judgment upon such provisions as they might discover, rather than upon the instructions of the court. It must also be borne in mind that in this case the charge was for an assault upon a child which was shown to be less than 12 years of age, and therefore the section referred to was the more liable to mislead the jury, the prosecution being under another provision of the criminal law.

It is the well-established rule of law, as held in all courts, so far as we know (unless the rule be changed by statute), that affidavits of jurors will not be received for the purpose of impeaching or avoiding their verdict in respect to a matter which esentially inheres in the verdict itself, as that the juror was mistaken in a computation, or misunderstood a witness, or did not comprehend the instructions of the court. The reason for the rule is, that the matters referred to being alone within the breast of each juror it would be impossible to rebut any statements which might be made. See cases cited in *Cowles v. R. R. Co.*, 32 Iowa, 515; and in *Perry v. Bailey*, 12 Kas., 539. I think it may further be said that the rule adopted by the greater number of courts, both in this country and in England, is, that affidavits of jurors will not be received in any case for the purpose of impeaching or avoiding their verdict, but to this there are a number of exceptions, and to our mind the opposite rule is much more reasonable and promotive of justice. This is confined to such overt acts as may be seen or heard, and about which all the jurors present may testify with equal knowledge. Thus, where a verdict for damages is ascertained by aggregation and division, without subsequent ratification, or where it is made to depend upon chance,

or where a part of the jury become so intoxicated as to destroy their ability to deliberate and exercise reason and judgment, or where witnesses are surreptitiously called before them and permitted to detail the principal facts; or where it appears that one of the jurors was familiar with the facts of the case, and by reason of his suppression of the fact of such acquaintance he procures himself to be accepted as a juror, and in the jury room asserts such knowledge, and assumes the role of both witness and advocate, and procures a verdict, and the like; all of which, being matters of sight and hearing, are susceptible of proof or contradiction by the testimony of others. In such cases we can see no danger in permitting proof of the facts by the affidavits of the jurors themselves. As said by Mr. Justice Brewer, in *Perry v. Bailey, supra:* "If the jury have been guilty of no misconduct, no harm has been done by permitting their testimony to be received. If the jury has been guilty of misconduct, but such misconduct was not of such a nature as to prejudice the rights of the parties, the modern rule is to let the verdict stand, and simply punish the offending juror. But if such misconduct has wrought prejudice, not only should the juror be punished, but the verdict should also be set aside."

This doctrine is fully sustained by the supreme court of Kansas in *Johnson v. Husband,* 22 Kas., 277; and by the supreme court of Iowa in *Wright v. I. & M. Telegraph Co.,* 20 Iowa, 195, where the cases are reviewed with considerable care by Mr. Justice Cole. See also *Cowles v. C., R. I. & P. R. Co.,* 32 Id., 515. *Grennell v. Phillips,* 1 Mass., 529. *Kruidenier v. Shields,* 30 N. W. Rep., 681. *Crawford v. State,* 2 Yerger, 60. *Eldridge v. Todd,* 1 Humphrey, 43. *Norris v. The State,* 3 Id., 333. *United States v. Reid,* 12 Howard, 361.

It appears from the record that the district court entered upon an examination of the question of misconduct of the

jury, but doubtless thought it best to follow the more an-
cient and popular rule, that the verdict could not be im-
peached by the affidavits of the jurors who composed the
panel. There is no doubt but that the rule adopted by
the district court is supported by the greater number of
authorities, but, as we have said, the arguments in favor
of the rule here adopted, are, it seems to us, much more
cogent and reasonable.

The decision of the district court is therefore reversed,
the judgment vacated, and the cause remanded for further
proceedings according to law.

REVERSED AND REMANDED.

THE other judges concur.