JACOB BLAKE, Appellee, v. THE CITY OF BEDFORD, IOWA, Appellant.

**EVIDENCE: Expert or Opinion Testimony—Detail of Facts—When 1 Not Necessary.** A physician who professes to speak *from his personal observation, examination and treatment* of a patient may properly express an opinion based thereon, without first detailing all that he has learned from his examination and treatment of the patient. The accuracy and reasonableness of his opinion, if questioned, may be tested on cross-examination.

**EVIDENCE: Conclusions—When Harmless—Detail of Fact.** The 2 statement of a conclusion by a witness is rendered harmless if, in connection therewith, the facts upon which the statement is based are detailed to the jury.

> PRINCIPLE APPLIED: The witness'stated that a sidewalk was in "bad shape." In connection therewith, he stated that the boards for a long time had been loose, stringers rotten, and boards frequently out of place. *Held*, if the statement that the walk was in "bad shape" was a conclusion, it was rendered harmless by the detailed facts.

**MUNICIPAL CORPORATIONS: Sidewalks—Second-Hand Material 3 —Notice of Defect.** That a sidewalk was built of second-hand

materials, such fact being known to members of the city council, is admissible on the question of notice.

EVIDENCE: Negligence—Defective Sidewalks—Repairs Subsequent
4 to Injury—For What Purpose Admissible. Evidence that a walk was taken up and repaired after an injury may be admissible, not to show negligence on the part of the city, but, if material, to show that the walk at time of trial is not in the same condition as at the time of the injury. If admitted, and defendant desires the evidence to be·so limited, it should so request the court. ·

EVIDENCE: Life Tables—Expectancy of Life—Disputed Permanent.
5 Injury. Life tables showing expectancy of life are admissible when the permanency of the injury is a fair question for the jury.

LIMITATION OF ACTIONS: New Cause·of Action—Expanding
6 Claim by Amendment. An amendment to a petition, "expanding or elaborating" the allegations of the petition already filed, sets up no new cause of action, rendering the claim subject to a plea of the statute of limitation.

PRINCIPLE APPLIED: The original petition declared on injuries "to back, left hip and leg, rupturing and injuring the tendons, muscles and attachments of his back, left hip and leg," and alleged actual notice. The amendment set up that the left hip bone was broken and that on account thereof he had been obliged to incur an operation and attendant expense. It also elaborated the defective condition of the walk and alleged both actual and constructive notice. Held, no new cause of action was set up.

INSTRUCTIONS: Erroneous in Part—Correct as a Whole—Negli-
7 gence. An instruction which may have been objectionable as submitting the question of the negligence of a city in the original construction of the sidewalk, when no negligence in that respect was charged, is not error when the instruction, construed as a whole, obviates the objection.

INSTRUCTIONS: Repetition of Statements of Law—Non-Necessity.
8 The court need not and cannot in every sentence or in every paragraph attempt to restate all the law applicable to each phase of the controversy. It is sufficient if the law be stated with substantial accuracy in the instructions· as a whole.

MUNICIPAL CORPORATIONS: Defective Streets—Notice to Com-
9 mittee. It is a matter of judicial knowledge that the duties of a

city with reference to streets are ordinarily performed, to a great extent, by a committee having special charge of such streets. Therefore, the court did not err in stating to the jury that notice of a defect in a sidewalk brought home to such committee would be notice to the city, especially when at least one member of the committee was identified as having such notice.

**NEGLIGENCE:** Recovery Without Negligence—Instruction Not Authorizing. Instruction, in instant case, reviewed and held not to authorize a recovery without proving negligence on part of defendant or to recover damages other than those pleaded.

*Appeal from Taylor District Court.*—HON. THOS. L. MAX-WELL, Judge.

SATURDAY, FEBRUARY 20, 1915.

. REHEARING DENIED FRIDAY, MAY 7, 1915.

ACTION at law to recover damages for personal injury caused by the alleged negligence of the defendant. Judgment for plaintiff and defendant appeals.—*Affirmed.*

*Frank Wisdom, G. B. Haddock* and *Flick & Flick,* for Appellant.

*McCoun & Brant,* for Appellee.

WEAVER, J.—The plaintiff alleges that the defendant city negligently permitted one of its sidewalks to become defective, out of repair and unsafe for public use, and that by reason of such defective condition of said walk the plaintiff, while lawfully using the same, was tripped or thrown down without fault or negligence on his part, thereby sustaining serious bodily injuries for which he asks a recovery in damages.

Answering the petition, defendant denies all allegations of negligence on its part and further avers that at the time of the alleged injury plaintiff knew, or should have known, that he was in such physical condition as to render it unsafe

for him to travel on any sidewalk and his injury, if any, is chargeable to his own negligence.

There was a trial to a jury and verdict and judgment for plaintiff in the sum of $2,750.

There was evidence tending to show that plaintiff was about sixty years old, was a resident of Bedford, and the injury of which he complains occurred on or about July 6, 1912. Prior to that date, on September 29, 1911, plaintiff had fallen from a ladder and received more or less injury. He is a laborer and when well had an earning capacity of $2.00 to $2.25 per day. The evidence further tends to show that in the fall from the ladder plaintiff sustained what the surgeons call an impacted fracture of the neck of the femur, a fracture in which the broken parts of the bone are driven or forced together. From this injury he appears to have been disabled for several months, but prior to the time of the injury in this case there is evidence that he had so far recovered as to be able to walk with crutches and then with crutch and cane and to perform some work in the garden and various kinds of other light manual labor. The expert evidence fairly sustains the conclusion that a union of the broken bone or a fibrous union by which the bones were held in position had taken place and that plaintiff was making progress toward a more or less complete recovery, though such progress was necessarily slow, and plaintiff's restoration to the full measure of strength and physical capacity which he had enjoyed before his injury was perhaps doubtful. On the day mentioned in the petition, he was walking with the aid of crutch and cane in company with another person, when one of the sidewalk boards flew up or tipped in such manner as to catch his foot or crutch, throwing him down. Being unable to walk, an automobile was called and he was carried home. The next day he was taken to a neighboring town to consult a doctor. He continued to complain of the alleged results of his last fall, and tried different remedies, until the following February, when a surgical operation was performed in which

an incision was made through the flesh to the joint and a nail driven up through the neck of the bone in an attempt to join the broken parts and set up an irritation which it was hoped would stimulate the growth of new bony substance and provide a more or less complete union. The examination then had disclosed a fibrous union which to some extent compensated for the loss of the use of the bone, but the extent of the benefit, if any, to be derived from the surgical operation appears still to have been a matter of doubt at the time of the trial. Plaintiff's damages were assessed by the jury at $2,750.

The errors assigned by appellant are entirely too numerous for separate consideration and discussion, but we shall endeavor to so group them that nothing of a material character will be omitted.

I. A physician who was shown to have personally examined and treated plaintiff for his injuries was asked for his opinion whether a union, bony or fibrous, of the broken bone had taken place prior to the plaintiff's fall on the sidewalk. In this question the witness was asked, among other things, to speak from his examination and observation of the patient, and over the objection of the defendant he was allowed to answer. It is said in support of the objection that the physician should not have been allowed to answer until he had first detailed to the jury all that he had learned or discovered in his examination and treatment of the patient. But such is not the rule as we understand it. If a witness is testifying purely as an expert, pronouncing an opinion solely upon a hypothetical state of facts, then, of course, it is the right of the opposing party to insist that the question shall disclose all the facts upon which the opinion is to be pronounced; but if the witness be a physician who professes to speak from his personal observation, examination and treatment, he may properly express an opinion based thereon, it being, of course, the privilege of counsel on the other side by cross-examination to test its accuracy and reasonableness.

1. EVIDENCE: expert or opinion testimony: detail of facts: when not necessary.

As to the other objection, that the interrogatory assumed the existence of facts not shown, we think the question as stated is not without support in the record. It is moreover to be said that the answer given by the witness was of a very indefinite character and not calculated in any way to prejudice the defendant. It was in substance that in his opinion either a bony or fibrous union of the broken parts had taken place. This was disputed by no one, and the subsequent surgical examination disclosed a fibrous union.

A witness upon the condition of the sidewalk described it as in "bad shape." In the same connection, he proceeded to tell what he observed of its condition—that for a long period the boards were loose, stringers rotted and boards were frequently out of place. This fully explained what the witness meant by "bad shape," and even if that expression should have been stricken out (which we do not decide), its retention in the record was not prejudicial.

2. EVIDENCE: conclusions: when harmless: detail of fact.

Plaintiff's son testified to a conversation with one Humphreys, in which he called the attention of the latter to the fact that when this walk was put in or replaced it was done with second-hand material, and upon the admission of this evidence error is assigned. It is shown, however, that Humphreys was a member of the city council and a member of the committee on streets and the testimony was competent as tending to show notice to the city.

3. MUNICIPAL CORPORATIONS: sidewalks: second-hand material: notice of defect.

Testimony was admitted tending to show that the sidewalk at the place in question was repaired or renewed soon after the plaintiff's fall thereon. The same fact had already been voluntarily brought out by defendant upon cross-examination of one of the plaintiff's witnesses. It had also been testified to by the same witness on direct examination without objection. The fact was not necessarily incompetent or irrelevant. Under the rule which has been applied in this state, proof of subsequent repair does

4. EVIDENCE: negligence: defective sidewalks: repairs subsequent to injury: for what purpose admissible.

not imply any admission by the defendant of the alleged defect; but ordinarily it is competent to show, if such be the case, that the walk as it exists at the time of trial is not in the same condition as when the alleged injury occurred. Had the appellant requested it, the court would doubtless have instructed the jury properly limiting the use to be made of this testimony, but such request was not made and the exception to its introduction cannot be sustained. *Frohs v. Dubuque*, 109 Iowa 219.

Plaintiff was also permitted to show that the expectancy of life of a person of plaintiff's age is fourteen years. The admissibility of this fact in evidence is denied on the theory

5. EVIDENCE: life tables: expectancy of life: disputed permanent injury.

that there was no testimony upon which the jury could properly find that the injury, if any, which plaintiff sustained is permanent. As we read the record, there is an abundance

of evidence to support that conclusion. There is, of course, more or less uncertainty as to how much of plaintiff's crippled condition is due solely to his first injury and how much to his fall on the sidewalk; but the inquiry is not to be disregarded as a mere matter of conjecture and it was within the province of the jury to find the fact according to its best judgment from all the circumstances developed on the trial. There was direct and explicit evidence that, at the time of his fall on the walk, plaintiff had to a very material degree recovered from his first injury. It is shown that he worked in the garden, split wood and did the ordinary chores about his home. The physician in charge of the case says of him at that time that he could put his whole weight upon that leg, could squat down and pick up things and could cross his legs. There is other evidence of the same general character. These statements, if believed by the jury, clearly justified the conclusion that prior to the last injury a fairly serviceable union—either bony or fibrous—had taken place or was in process of development. After his fall on the walk and up to the time of the trial, plaintiff had been unable to walk except on crutches. He had not been able to perform any

labor. There was still a distinct crepitation indicating a movement or friction between the broken parts of the bone and a failure of union between them. None of the surgeons gave any confident assurance or expressed any positive hope of his ultimate recovery. True, one of the experts declined to say whether plaintiff was in any worse condition at the time of the trial than he was immediately before the second injury; but in the same connection said it was impossible for him to say whether the injured man would or would not have a better limb by reason of the surgical operation than he would have had without it or without the second injury, and concluded with the remark, "To let him get along the best he can is all that can be done for him." From this and other testimony along the same lines, including the plaintiff's age, considered in the light of the ordinary observation and experience of mankind, it is difficult to conceive how a jury could do otherwise than say that the injury of which he complains is of a permanent character. The fact that plaintiff had sustained a prior injury is, of course, material; but it constituted no defense to this action if he has succeeded in showing to the satisfaction of the jury that, by reason of the defendant's negligence with respect to its sidewalk, he was made to fall, without fault on his part, and thereby received other or additional or increased injury. Under the issues joined and the evidence offered, these were questions for the jury, as was also the question whether the injuries, if any, were of permanent character. The life tables were therefore properly admitted.

II. The petition as originally filed stated the injuries of the plaintiff to be to his back, left hip and leg, rupturing and injuring the tendons, muscles and attachments of his back, left hip and leg, and that such injuries were 6. LIMITATION OF ACTIONS: new cause of action: expanding claim by amendment. permanent. Thereafter, an amendment to the petition was filed stating that, in addition to the injuries described in the original pleading, plaintiff's left hip bone was broken and that, on account of said injuries, he had been obliged to undergo

a surgical operation and incur large expense. It also stated more elaborately the alleged defective condition of the sidewalk where plaintiff fell, and that the city had both actual and constructive notice of such conditions in time to have repaired it before the alleged accident. To this amendment defendant pleaded the statute of limitations. In its charge to the jury the court did not submit the issue of the statute of limitations, and to this omission the defendant has taken exception.

The amendment stated no new cause of action. Stated briefly, the cause of action as originally alleged was the injury claimed to have been sustained by the plaintiff by reason of the defendant's negligence in the maintenance of the sidewalk. The amendment does no more than to vary and expand or elaborate the allegations made in support of the cause of action already declared upon and relates back to the commencement of the action. In no proper sense of the word is it a statement of a new cause of action. See *Gordon v. C. R. I. & P. Ry. Co.*, 129 Iowa 747.

So also of the point made by appellant that the original petition charges the city with actual notice of the defect in the walk, while the amendment alleges both actual and constructive notice. The essential ultimate fact to be alleged and proved was notice to the city, and the further inquiry whether the notice was actual or constructive was solely a question of evidence and the amendment in this respect did not materially change the effect of the pleading. Indeed, we are of the opinion that the case which plaintiff made upon the trial would have been provable to the same extent had the amendment not been filed.

7. INSTRUCTIONS: erroneous in part: correct as a whole: negligence.

III. Exceptions to the court's instructions to the jury, so far as the points thus raised are not governed by the conclusions we have already stated, are as follows:

Of the duty incumbent on the city, the court said to the jury:

"It is the duty of the defendant city, in the exercise of its corporation power, to construct and maintain sidewalks along its streets, and it must exercise ordinary and reasonable care in such construction and use ordinary and reasonable diligence to see that such sidewalks are maintained in a reasonably safe condition for public travel, and a failure on its part to exercise such ordinary and reasonable care and diligence in these respects would constitute negligence for which it would be liable."

If we understand the exception taken to this statement of the law, it is that the court submits to the jury the question of the original construction of the walk when no negligence in that respect is charged. But the language quoted is only a part of the paragraph in which it is found, and, when read as a whole, it appears that, after stating the general rule as above, it proceeds to instruct the jury specifically that, as applied to the case on trial, plaintiff must show that, if the city allowed its walk at the place in question to become out of repair and to remain in a dangerous and unsafe condition, then the finding of negligence on its part would be justified, provided that notice had been shown or the defective condition had existed for such a length of time that the city ought to have discovered it. There is nothing in this instruction of which the defendant can justly complain.

In another part of the same paragraph, the jury were told that, before finding the defendant negligent, notice of the defect, actual or constructive, must be shown and the city must have had reasonable opportunity to re-

8. INSTRUCTIONS: repetition of statements of law: non-necessity.

pair it. This charge is criticised because it does not state with sufficient elaboration what would be a reasonable time for such purpose. Again the court referred to the subject and called the jury's attention to the necessity of notice to the city "in such time that the defendant might have repaired the same" before the injury to the plaintiff. This statement is objected to because

the court did not repeat what it had just said as to the matter of reasonable time in which to make repairs.

The objections are to a great extent overdrawn and savor of hypercriticism. Reading the entire paragraph, it shows careful regard on the part of the court for the rights of the defendant. The court does not and cannot in every sentence or in every paragraph attempt to repeat or restate all the law applicable to each and every phase of the controversy. It is to be assumed that the jury have at least average intelligence and fairness of mind and will give heed to the entire charge of the court according to its evident meaning, and there is nothing in the language to which appellant's objections refer which appears capable of misleading them to the defendant's prejudice. The rule as stated in the charge has the uniform support of the authorities.

It is further objected that the court erred in charging the jury that notice to the mayor of the city or its councilmen or street commissioner or committee on streets and alleys would be sufficient for the purposes of the law.

9. MUNICIPAL CORPORATIONS: defective streets: notice to committee.

The objection is directed specially to the reference made to the city's committee on streets. It is said the law knows no such office or officer and the committee may be composed of officers or persons not members of the council. But the court is not required to shut its eyes to the ordinary methods of business. It is a matter of common knowledge that the duties of city councils are ordinarily performed to a great extent through the agency of committees of their membership, and among these is usually a committee having special charge and oversight of the public ways within the municipality. Moreover, it appears affirmatively in this record that the defendant city had such a committee and, while its membership generally is not disclosed, one of its members was identified and evidence introduced tending in some degree to show knowledge or information on his part as to the walk in controversy. Under such circum-

stances, the court did not err in telling the jury that notice to its street committee was notice to the city.

The court further charged the jury,—"If you find that the plaintiff in passing along said sidewalk in company with another person who stepped upon a loose plank or board in said sidewalk, in such a way that the same became detached, and tripped, and threw the plaintiff to the ground and that as a result thereof, that his hip and limb were fractured, bruised, or otherwise injured, then you will be justified in finding that plaintiff was injured by reason of said defective condition of said sidewalk, and the nature and extent of such injury it will be your duty to determine from the evidence."

10. NEGLIGENCE: recovery without negligence: instruction not authorizing.

This the counsel for appellant construe as a direction to the jury that, if they find the defendant was injured by tripping over a loose board in the walk, then a finding would be justified that he was thus injured by the negligence of the city. This is a palpable misconstruction of the court's language. The quoted language makes no reference whatever to the negligence of the city and does not even by remote inference suggest to the jury that the finding of the facts therein mentioned would support such a conclusion. The court was here speaking only of the question whether the walk was in fact in a defective condition and whether by reason thereof plaintiff fell and was injured. In other words, it here directed the jury's attention to the first of the several things, all of which plaintiff must prove in order to recover. The subject of defendant's negligence, if any, with respect to such condition is not here spoken of but is fully and sufficiently treated of in another paragraph.

Further objection is urged to the use of the words, "otherwise injured," it being said this allowed the jury to find damages for injuries not mentioned in the pleadings. There is no merit in this proposition. Plaintiff did declare that his "hip and leg were fractured, bruised or otherwise injured." The

instruction properly uses the same form of expression. The allegation was broad enough to support a recovery for any material injury of which there was evidence to the hip or leg, whether it was or was not specifically or technically described in the petition, if the charge of negligence was sustained by the testimony and plaintiff was otherwise shown entitled to recover.

Numerous other objections are raised to the instructions and argued by counsel, but we cannot protract this opinion for their more specific consideration. To some extent, the questions so suggested are fully covered by the rulings we have already made. And as a whole it must be said of them, as we have before intimated, that they subject the language of the court to an overrefinement of criticism which, if followed by this court, would render it practically impossible to make a record capable of standing the test of an appeal. Substantial correctness in the statement of the legal principles applicable to issues tried to a jury is all that can be expected, and judgments are not to be reversed and litigation prolonged unless error appears which we may reasonably suppose to have affected the result of the trial to the prejudice of the losing party. We find nothing of this kind in any of the instructions challenged by the appellant.

IV. It is finally argued that the verdict is without sufficient support in the evidence. It is enough to say in overruling this objection that practically every material fact put in issue, the negligence of the defendant, the injury thereby to the plaintiff, contributory negligence of the plaintiff, the extent of his injury, if any, are the subject of a conflict of evidence and therefore necessarily matters for the jury. The veracity of the witnesses, the weight and value of their testimony, and the preponderance of the evidence are questions with which the court has nothing to do. They have been found and decided by the jury against the defendant, and

there being no apparent prejudicial error in the record, that verdict must stand.

The judgment appealed from is—*Affirmed.*

DEEMER, C. J., EVANS, PRESTON, LADD, and GAYNOR, JJ., concur. SALINGER, J., not sitting.